THOMAS F. SCULLY *vs.* RETIREMENT BOARD OF BEVERLY.

No. 10-P-860.

Essex. April 6, 2011. - September 30, 2011.

Present: COHEN, KATZMANN, & VUONO, JJ.

*Public Employment,* Forfeiture of pension. *Municipal Corporations,* Retirement board, Pensions. *Pension.*

A municipal retirement board erred in revoking a library employee's retirement allowance on the ground that his convictions of possession of child pornography involved violations of the laws applicable to his position, where the facts underlying the convictions did not establish the requisite direct link between his convictions and his position, in that the criminal conduct at issue occurred at the employee's home and involved his personal computer (rather than library computers), and all charges concerning the employee's alleged unlawful interaction with a seventeen year old male were dismissed or nol prossed by the Commonwealth in connection with a negotiated plea bargain; further, no substantial evidence supported a finding that the teen saw either of the two images the employee was convicted of possessing. [542-545]

CIVIL ACTION commenced in the Superior Court Department on November 9, 2009.

The case was heard by *Richard E. Welch, III,* J., on motions for judgment on the pleadings.

*Thomas C. Fallon* for the plaintiff.

*Michael Sacco* for the defendant.

VUONO, J. After the plaintiff, Thomas F. Scully, was convicted of two counts of possession of child pornography, the Beverly retirement board (board) revoked his retirement allowance on the ground that the convictions involved violations of the laws applicable to Scully's office or position as director of community services at the Beverly Public Library (library). See G. L. c. 32, § 15(4). The board's decision was affirmed by a District Court judge, and then by a Superior Court judge, who,

on Scully's petition for certiorari review pursuant to G. L. c. 249, § 4, entered judgment on the pleadings in favor of the board. While Scully's conduct was reprehensible, in view of the narrow interpretation that consistently has been given to G. L. c. 32, § 15(4), we are constrained to conclude that the mandatory forfeiture of Scully's pension was not legally tenable.[1]

*Background.* Scully began his employment as director of community services with the library in 1986.[2] He resigned in May, 2005, after Beverly police executed a search warrant at his home and discovered seven images of child pornography on his home computer. The police had been conducting an investigation into allegations of sexual misconduct perpetrated by Scully with a seventeen year old male, whom we shall call Matthew. The police interviewed Matthew on April 22, 2005, at which time Matthew disclosed that he had met Scully at the library when he was fifteen years old. According to Matthew, Scully approached him after discovering that he was viewing questionable material on a library computer.[3] Scully warned Matthew to be careful, and then invited Matthew back to his home where Matthew could "safely" view such material. Matthew went to Scully's house many times. While there, he viewed adult pornography on digital video discs (DVDs) provided by Scully. As set forth in the police report, Matthew "indicated that Scully had printed pictures of naked boys from his home computer and gave them [to Matthew] to keep [and that] one of the pictures was of a child who was definitely under 18." Matthew also told the police that on one occasion Scully had "grabbed" his "butt" with one hand over his clothing while Matthew was walking upstairs.

Shortly thereafter, on July 13, 2005, Scully was indicted on seven counts of possession of child pornography, one count of providing obscene matter to a minor (Matthew), and one count

[1]In light of our conclusion, we need not reach Scully's claim that the forfeiture of his pension constituted an excessive fine in violation of the Eighth Amendment to the United States Constitution.

[2]Scully had previously worked at the Peabody Public Library. At the time of his resignation, Scully had completed more than twenty-seven years of creditable service under G. L. c. 32, § 1.

[3]Matthew told the police that he was visiting a "Buffy the Vampire" Internet chat room where he was "cybering," an activity which Matthew described as "on-line sex."

of indecent assault and battery on a person age fourteen or over (Matthew). For reasons that do not appear in the record, the indecent assault and battery indictment was dismissed on July 7, 2006. The rest of the case was resolved three years later when, on January 29, 2009, Scully pleaded guilty to two counts of possession of child pornography. The Commonwealth filed a nolle prosequi on the remaining indictments at the time of the plea. During the guilty plea hearing, Scully admitted that he had possessed two images of child pornography on his home computer. However, there was no allegation (and therefore no admission) that he had shown either image on which the convictions were based to Matthew.

Meanwhile, upon his resignation from the library, Scully submitted an application for voluntary superannuation retirement pursuant to G. L. c. 32, § 10(1), which the board granted effective May 12, 2005. In February, 2009, the board notified Scully that it was commencing a proceeding to determine the effect (if any) of his convictions on his entitlement to a retirement allowance. A hearing before the board, at which Scully was represented by counsel, was held on July 30, 2009. The hearing officer, an attorney who also represents the board, presented copies of the indictments against Scully, the transcript of Scully's plea colloquy, and a police report containing Matthew's statements as referenced above.[4] Additionally, the hearing officer asked Scully, who appeared at the hearing pursuant to a subpoena, a number of specific questions with regard to the factual circumstances underlying the criminal investigation. Three of the questions posed sought information about Scully's conduct toward Matthew. The three questions were as follows:

> Q.: "Mr. Scully, do you dispute that upon meeting this child in the Beverly library, that you invited this child to your home in Beverly and allowed him to view and showed him under-age pornographic material?

---

[4]The record reflects that, prior to the hearing, the hearing officer also distributed to the board, in violation of G. L. c. 268, § 13D, transcripts of the 2005 grand jury proceedings which had resulted in Scully's indictments. Conceding that this was improper, the recommendation (which was adopted by the board) expressly disclaims any reliance on the grand jury transcripts, and we do not consider them in our analysis.

"  . . .

*Q.:* "Mr. Scully, do you dispute that the pornographic material for which you were convicted was taken from the same computer that you permitted the child you met in the library to view in your home?

"  . . .

*Q.:* "Mr. Scully, do you dispute that you pleaded guilty to two counts of child pornography and that these criminal charges stemmed from your alleged inappropriate conduct with a minor child you met at the library in your capacity as director?"

On the advice of counsel, Scully invoked his privilege under the Fifth Amendment to the United States Constitution and did not answer the questions.[5] The hearing officer concluded that Scully's convictions involved violations of the laws applicable to his office or position within the meaning of G. L. c. 32, § 15(4), and recommended that the board revoke Scully's retirement allowance. In his written recommended findings and decision, the hearing officer reasoned that notwithstanding the entry of nolle prosequi or dismissal of all charges based on conduct involving Matthew, a direct link between Scully's convictions and his position at the library existed because "but for" meeting Matthew at the library and inviting Matthew to his home, the police would not have had probable cause to search Scully's home computer where they found evidence of a crime, namely the possession of child pornography. The hearing officer also determined that, based on an adverse inference drawn from Scully's refusal to answer the questions quoted above, "[Matthew] was allowed to view [the same child pornography that was discovered on Scully's] computer." By a three-to-two vote, the board adopted the recommendation of the hearing officer. Based largely on the same reasoning, the District Court and the Superior Court judges affirmed the decision.

---

[5]As the board acknowledges, Scully apparently was willing to waive his constitutional rights and answer some of the questions but was informed that he could either answer all the questions or none.

*Discussion.* The scope of judicial review in the nature of certiorari is limited. See *State Bd. of Retirement* v. *Bulger*, 446 Mass. 169, 173 (2006). "Certiorari allows a court to 'correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff.' " *Ibid.*, quoting from *Massachusetts Bay Transp. Authy.* v. *Auditor of the Commonwealth*, 430 Mass. 783, 790 (2000). In reviewing an administrative decision pursuant to a petition for certiorari, we review the entire record to determine whether the decision is legally tenable and supported by substantial evidence. *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. 130, 135 (1997). In doing so, we are not authorized "to make a de novo determination of the facts, to make different credibility choices, or to draw different inferences from the facts found by the [board]." *Id.* at 141, quoting from *Pyramid Co.* v. *Architectural Barriers Bd.*, 403 Mass. 126, 130 (1988).

We now turn to the issue whether the board's decision that Scully must forfeit his pension is legally tenable. The statute, G. L. c. 32, § 15(4), inserted by St. 1987, c. 189, § 47, provides, in relevant part, that "[i]n no event shall any member [of the retirement system] after final conviction of a criminal offense *involving violation of the laws applicable to his office or position*, be entitled to receive a retirement allowance . . ." (emphasis added).[6] The Supreme Judicial Court has held that § 15(4) "is considered to be penal and, therefore, its language must be construed narrowly, not stretched to accomplish an unexpressed result." *State Bd. of Retirement* v. *Bulger, supra* at 174-175. The scope of G. L. c. 32, § 15(4), was enunciated in *Gaffney* v. *Contributory Retirement Appeal Bd.*, 423 Mass. 1, 4 (1996), where the Supreme Judicial Court stated that "[t]he substantive touchstone intended by the General Court is criminal activity connected with the office or position." In determining whether the forfeiture provision has been triggered, therefore, we "[l]ook[ ] to the facts of each case for a *direct link* between *the criminal offense* and the member's office or position." *State*

---

[6]Section 15(4) further provides that upon such a conviction the member "shall receive, unless otherwise prohibited by law, a return of his accumulated total [contributions to the retirement system]; provided, however, that the rate of regular interest for the purpose of calculating accumulated total [contributions] shall be zero."

*Bd. of Retirement* v. *Bulger, supra* at 175, quoting from *Gaffney* v. *Contributory Retirement Appeal Bd., supra* at 4-5. We remain mindful, however, that "the General Court did not intend pension forfeiture to follow as a sequel[] of any and all criminal convictions." *Gaffney* v. *Contributory Retirement Appeal Bd., supra* at 5. Accord *Herrick* v. *Essex Regional Retirement Bd.,* 77 Mass. App. Ct. 645, 653 (2010).

Scully contends that the record fails to establish a direct link between his convictions of possession of child pornography and his position at the library. While we do not ignore the severity of the offenses to which Scully pleaded guilty, we conclude that the facts underlying the convictions do not present "the type of direct link intended by the Legislature." *Id.* at 654. Initially, we note that there is no evidence in the record that Scully either stored or accessed child pornography on library computers. Furthermore, Scully did not use his position to facilitate the crime of which he was convicted. Here, the criminal conduct at issue — possession of child pornography — occurred at Scully's house and involved his personal computer. Although we do not condone Scully's conduct, in particular his interaction with Matthew, a direct link between Scully's position and the conviction of possession of child pornography must be shown. As noted, all the charges concerning Matthew were dismissed or nol prossed by the Commonwealth in connection with a negotiated plea bargain. Therefore, the direct link that the statute requires has not been established.

The board argues that Scully's convictions are directly linked to his job because Matthew's statement to the police provided probable cause to search Scully's home, which, in turn, led to the discovery of the child pornography for which Scully was convicted. We are not persuaded. The forfeiture provision, which must be construed narrowly, is not triggered where some work-related conduct sparks an investigation, but where there is "a direct link between the public position and the offense for which the member is convicted." *Id.* at 654-655. The connection the board asserts is too tenuous to meet that standard.[7]

---

[7]The board's reliance on *Maher* v. *Justices of the Quincy Div. of the Dist. Ct. Dept.* 67 Mass. App. Ct. 612 (2006), *S.C.,* 452 Mass. 517 (2008), is misplaced. In that case we upheld forfeiture under § 15(4) when a city inspector

Likewise, we are not persuaded by the board's assertion (adopted by the Superior Court judge) that a direct link between the child pornography convictions and Scully's position exists because "[Matthew] viewed the same illegal pornography for which Scully was convicted of possessing." This argument is flawed in two respects. First, the asserted connection is based on conduct related to a criminal charge (distribution of harmful material to a minor) that did not result in a conviction, as required by the statute. The board's analysis simply does not take into account the fact that the mandatory forfeiture provision is triggered only by a member's conviction and not by illegal (or unsavory) conduct.[8] As we have emphasized, the forfeiture provision has been construed narrowly by our cases. Moreover, despite this consistent interpretation, the Legislature has not modified the statute. Based on controlling precedent and the plain (unchanged) language of the statute, the board's reliance on criminal activity that did not result in a conviction constitutes a substantial error of law.

Second, the board's finding that Scully showed Matthew the same child pornography for the possession of which he was convicted is not supported by substantial evidence. The board's finding is based almost entirely on the inference it argues may be drawn from Scully's refusal, on Fifth Amendment grounds, to answer the question whether he showed that same child pornography to Matthew. "In a civil action, a reasonable inference adverse to a party may be drawn from the refusal of that party to testify on the grounds of self-incrimination." *Quintal* v. *Commissioner of the Dept. of Employment & Training*, 418 Mass. 855, 861 (1994), quoting from *Labor Relations Commn.* v. *Fall River Educators' Assn.*, 382 Mass. 465, 471 (1981). However, "the adverse inference drawn from the silence of a party is insufficient, 'by itself, to meet an opponent's burden of proof.' " *Ibid.*, quoting from *Custody of Two Minors*, 396 Mass. 610, 616 (1986). "Instead, 'a case adverse to the interests of the party

---

was convicted of breaking into the city hall and stealing documents from his personnel file. *Id.* at 616-617. Here, unlike the facts in *Maher*, Scully's convictions of child pornography were not related to his position at the library.

[8] The issue whether Scully forfeited his pension on the ground of moral turpitude, see G. L. c. 32, § 10(1), is not before us.

affected [must be] presented' before an adverse inference may be drawn." *Ibid.*, quoting from *Custody of Two Minors, supra.*

In this case, the only evidence in the record that supports the board's finding is the statement (attributed to Matthew) in the police report to the effect that Scully gave Matthew a picture depicting "a child who was definitely under 18." However, even assuming, arguendo, that this statement is true,[9] there is no evidence that Matthew saw either one of the two images underlying Scully's convictions. Thus, on the record before us, there is no basis in fact for the board's finding.

In sum, the board's decision is not in accordance with the law. As noted, the "statute at issue is a penal provision that must be strictly construed." *Herrick* v. *Essex Regional Retirement Bd.*, 77 Mass. App. Ct. at 655. Because the requisite connection between Scully's convictions and his position has not been established, we are constrained to conclude that the board committed a "substantial error of law" adversely affecting Scully's "material" right to receive his pension. *State Bd. of Retirement* v. *Bulger*, 446 Mass. at 173.

The judgment is reversed, and a new judgment shall enter in the Superior Court reversing the judgment of the District Court and the decision of the defendant board.

*So ordered.*

---

[9]While the proceedings before the board were not, of course, subject to the rules of evidence, the hearing officer was obligated to rely only on "the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." G. L. c. 30A, § 11(2). 840 Code Mass. Regs. § 10.12 (2002). The Supreme Judicial Court has held that hearsay is admissible in pension revocation hearings, but only if it bears the requisite "indicia of reliability." *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. at 140 (approving retirement board's consideration of prior trial testimony where retiree had been given opportunity to cross-examine witnesses). Matthew's statement to the police, including his disclosure that Scully gave him child pornography (one printed image), was not subjected to cross-examination and, therefore, might well lack the requisite indicia of reliability to constitute "substantial evidence" before the board. See *Embers of Salisbury, Inc.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. 526, 530 (1988) (hearsay may constitute "substantial evidence" in administrative proceeding only if it presents "indicia of reliability").