RETIREMENT BOARD OF MAYNARD *vs.* ANTHONY TYLER
& others.[1]

No. 11-P-1890.

Middlesex. September 10, 2012. - January 18, 2013.

Present: GRASSO, KANTROWITZ, & GRAHAM, JJ.

*Fire Fighter,* Retirement. *Pension. Public Employment,* Forfeiture of pension. *Municipal Corporations,* Pensions, Fire department.

In a civil action in the nature of certiorari, a Superior Court judge erred in requiring the forfeiture of a firefighter's pension, pursuant to G. L. c. 32, § 15(4), based on the firefighter's sexual abuse of young boys, where, although the firefighter's criminal conduct was reprehensible, no direct link existed between that conduct and the firefighter's position. [112-113] GRAHAM, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on July 6, 2010.

The case was heard by *Dennis J. Curran,* J., and entry of an amended judgment was ordered by him.

*Edward F. McLaughlin* for Anthony Tyler.

*Thomas F. Gibson* for the plaintiff.

KANTROWITZ, J. In this pension forfeiture matter, we hold that although the criminal actions of Anthony Tyler were reprehensible, they did not violate, under applicable statutes and case law, his office or position as a firefighter. As such, we are constrained to reverse a determination to the contrary.

*Facts.* The defendant, Anthony Tyler, was a Maynard firefighter and an emergency medical technician. In 2006, it came to light that Tyler had, for a number of years, been sexually abusing young boys. One of Tyler's victims was the son of another Maynard firefighter; the other victim was also related to

---

[1]Justices of the Concord Division of the District Court Department of the Trial Court.

a Maynard firefighter.[2] Tyler was indicted on various charges in 2006[3] and again in 2007.[4]

Tyler could have been discharged from his position on the grounds of moral turpitude, in which case he would have forfeited his pension. G. L. c. 32, § 10(1). See *Herrick* v. *Essex Regional Retirement Bd.*, 77 Mass. App. Ct. 645, 648-653 (2010). Instead, the town of Maynard (town) and the Maynard fire department (department) took no action. Conversely, Tyler, in 2006, following his first set of indictments, applied for retirement benefits, which were granted. Tyler later pleaded guilty to some of the various indictments, others being nol prossed, and began serving his prison sentence.

Upon notice from the district attorney's office that Tyler's case had been resolved, see G. L. c. 32, § 15(5), the Maynard retirement board (board) began an inquiry to determine whether, under G. L. c. 32, § 15(4), Tyler remained entitled to his pension.[5] After a hearing, the board voted to suspend Tyler's pension, generally concluding that "the fact that the molestations were committed on a fellow firefighter's son [constituted a] 'direct link' " between Tyler's offenses and his position.

Tyler appealed the board's decision to the District Court. After a hearing, a District Court judge set aside the board's decision and ordered that Tyler's benefits be reinstated retroactive to the date of their termination.[6] The District Court judge

---

[2]The Maynard board of retirement, in an unchallenged finding, concluded that there was "no evidence" that the incidents took place on town property or that Tyler was on duty when the incidents took place.

[3]Tyler was indicted on three counts of indecent assault and battery on a person over fourteen.

[4]Tyler was indicted on one count of rape and one count of indecent assault and battery on a person over fourteen.

[5]During the subsequent hearing, Tyler's direct superior, Fire Chief Stephen Kulik, testified that while he was aware of the criminal charges against Tyler, as well as his arrest, the department took no action to discipline him. Furthermore, Kulik had a discussion with the board about Tyler's retirement application prior to its approval.

[6]The District Court judge observed that "[a]lthough Tyler knew his victims through his fellow firefighters, his offenses were personal in nature." The District Court judge went on to observe that "[t]here is no evidence in the record that Tyler used a fire truck . . . to entice a young person; or that while in uniform he importuned a young person to visit a past fire site in order to commit indecent acts."

concluded that "Tyler's convictions do not constitute violations of the laws applicable to his position as a Maynard firefighter with a nexus sufficient to trigger pension forfeiture under G. L. c. 32, § 15(4)."

The board then filed the instant certiorari petition to the Superior Court. Based on the pleadings and the administrative record, the Superior Court judge concluded that in this case, a sufficient nexus or "direct link" existed between Tyler's criminal conduct and "the laws applicable to his office or position" as to require forfeiture.

*Law.* This case is controlled by G. L. c. 32, § 15(4), inserted by St. 1987, c. 697, § 47, and subtitled "Forfeiture of pension upon misconduct." The statute states, in pertinent part, "In no event shall any member after final conviction of a criminal offense *involving violation of the laws applicable to his office or position*, be entitled to receive a retirement allowance" (emphasis added).

The scope of the law was enunciated in *Gaffney* v. *Contributory Retirement Appeal Bd.*, 423 Mass. 1, 3-5 (1996), where the court held that it was clear that the Legislature intended the forfeiture provision to apply to any criminal activity connected with the office or position of the wrongdoer. The court, however, "did not intend pension forfeiture to follow as a sequelae of any and all criminal convictions. Only those violations related to the member's official capacity were targeted." *Id.* at 5. Further, the court enunciated that the facts of each case had to be examined to determine the existence of "a direct link between the criminal offense and member's office or position." *Ibid.* In *Gaffney*, there was such a link in that the member, the superintendent of Shrewsbury's sewer and water department, stole monies from his own department. See *Durkin* v. *Boston Retirement Bd.*, *post* 116, 118-119 (2013); *Flaherty* v. *Justices of the Haverhill Div. of the Dist. Ct. Dept. of the Trial Ct.*, *post* 120, 122-123 (2013).

Similarly, in *State Bd. of Retirement* v. *Bulger*, 446 Mass. 169, 179 (2006), the court held that by committing perjury before a Federal grand jury and obstructing justice, the member had violated the tenets of his clerk-magistrate position in that telling the truth was at the heart of a clerk-magistrate's role. As the member's crimes could not be separated from the nature of

his particular office, his pension was rightfully withheld. *Id.* at 179-180.

Conversely, in *Herrick* v. *Essex Regional Retirement Bd.*, 77 Mass. App. Ct. at 654-655, we held that the member, a custodian, was improperly denied his pension after he was convicted of indecent assault and battery of his daughter. We concluded, in part, that there was no direct link between his repugnant criminal actions and his job. *Id.* at 654.

So too, in *Scully* v. *Retirement Bd. of Beverly*, 80 Mass. App. Ct. 538 (2011), a pension was ordered reinstated. The member, a library employee, was arrested after the police discovered images of child pornography on his home computer. *Id.* at 539. We held that "[w]hile we do not ignore the severity of the offenses to which [the member] pleaded guilty, . . . the facts underlying the convictions did not present 'the type of direct link intended by the Legislature.' " *Id.* at 543, quoting from *Herrick, supra* at 654.

*Discussion.* The key question thus is whether Tyler's reprehensible criminal activity violated a law applicable to his position. General Laws c. 32, § 15(4), has consistently been given a narrow interpretation. *Bulger, supra* at 174-175. Had the Legislature wished to broaden the statute's reach, it clearly could have done so. That it did not compels our conclusion.

Here, the board and the Superior Court judge determined that "although there is no evidence that the crimes took place at the fire station, or that Tyler was ever on duty when he committed the crimes, the fact that the crimes were perpetrated on a co-worker's child" was evidence of a "direct link." Additionally, given Tyler's position as a firefighter and his obligation to protect the public, his criminal activities "violated the fundamental tenets of his position."

These considerations, while understandable, are so broad however as to engulf nearly every public official, especially police officers and firefighters, convicted of any crime. The reach of the statute as currently written is not so broad. A direct link must be established between one's actions and his official position.

We recognize the essential role firefighters play, extinguishing fires and protecting life and property. G. L. c. 48, § 42. Although Tyler knew his victims through his fellow firefighters,

his offenses were nonetheless personal in nature, occurring outside the firehouse while Tyler was not on duty. Moreover, there was no evidence that Tyler used his position, uniform, or equipment for the purposes of his indecent acts, nor were the acts committed on department property.[7]

*Conclusion.* As there was no "direct link" between Tyler's conviction and his position, the judgment of the Superior Court is reversed.

*So ordered.*

GRAHAM, J. (dissenting). On October 12, 2006, Anthony Tyler, a Maynard firefighter and emergency medical technician (EMT), was indicted on charges that, for years, he had been sexually molesting his neighbor's minor child. Tyler's neighbor was a fellow Maynard firefighter. On the same day, Tyler resigned and submitted an application for superannuation retirement. His application was accepted, and Tyler began collecting retirement benefits. On March 20, 2008, he pleaded guilty to three counts of indecent assault and battery on a person fourteen years or older; he was sentenced to three years and a day in State prison and was placed on probation for five years, probation to commence from and after the sentence.

After Tyler began serving his sentence, a second sexual abuse victim came forward, and on July 22, 2008, Tyler pleaded guilty to indecent assault and battery on a person fourteen years or older, and was sentenced to three years and a day, from and after the sentence he was already serving.

Following the criminal proceedings, the Maynard board of retirement (board) conducted a hearing and determined that Tyler was required to forfeit his retirement allowance pursuant to G. L. c. 32, § 15(4).[1] The board's decision was reversed by a judge of the District Court. On certiorari review, a judge of

---

[7]The board also claims that Tyler violated the rules of the department, which constitutes independent grounds to deny his pension. While his convictions violated the department's rules, and could have affected his employment or civil service status, they do not affect his pension, other than to say he could have been fired for moral turpitude and lost his pension.

[1]The statute states in pertinent part: "In no event shall any member after

the Superior Court quashed the decision of the District Court judge and remanded the case to the board, concluding that Tyler was not entitled to receive his retirement allowance.

The majority has concluded that, while Tyler's criminal behavior was "reprehensible," his behavior and convictions do not constitute violations of the laws applicable to his position as firefighter, within the purview of G. L. c. 32, § 15(4), and did not involve the administration of his duties and responsibilities as a firefighter and EMT.[2] I dissent.

General Laws c. 32, § 15(4), was enacted "to broaden the range of crimes that would lead to pension forfeiture" after the Supreme Judicial Court's decision in *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684 (1986). *Gaffney* v. *Contributory Retirement Appeal Bd.*, 423 Mass. 1, 3 (1996). To determine whether a member's criminal conviction falls within the scope of G. L. c. 32, § 15(4), we must "consider what laws are applicable to the office or position." *State Bd. of Retirement* v. *Bulger*, 446 Mass. 169, 175 (2006).

While there is no statute creating the position of firefighter, G. L. c. 48, § 42, as amended by St. 1973, c. 1048, § 1, provides for the establishment of fire departments and charges the department chiefs with "extinguishing fires in the town and the protection of life and property in case of fire." "There are certain forms of employment which carry a position of trust so peculiar to the office and so beyond that imposed by all public service that conduct consistent with this special trust is an obligation of the employment." *Perryman* v. *School Comm. of Boston*, 17 Mass. App. Ct. 346, 349 (1983) (specifically making reference to cases involving police officers, judges, and teachers). Illustrative of the special trust conferred on firefighters and EMTs is G. L. c. 119, § 21, as amended through St. 2008, c. 176, § 83, which includes firefighters and EMTs as "mandated reporter[s]."

---

final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance." G. L. c. 32, § 15(4), inserted by St. 1987, c. 697, § 47.

[2]The majority acknowledges that, had Tyler not resigned so quickly, he could have been discharged from his position on the grounds of moral turpitude, in which case he would have forfeited his pension. See G. L. c. 32, § 10(1); *Herrick* v. *Essex Regional Retirement Bd.*, 77 Mass. App. Ct. 645, 648-652 (2010).

Mandated reporters are required to file a report if they have "reasonable cause to believe that a child is suffering physical or emotional injury resulting from . . . abuse inflicted upon him which causes harm or substantial risk of harm to the child's health or welfare, including sexual abuse." G. L. c. 119, § 51A(*a*), as amended through St. 2008, c. 176, § 95.

The majority places great significance on the fact that Tyler's criminal convictions were for conduct that did not occur within the firehouse or while he was on duty. However, the required nexus is not that the crime be committed while the member was on duty, in the workplace, or using the tools of the workplace, but only that the criminal behavior be connected with the member's position. "The nature of [the member's] particular crimes cannot be separated from the nature of his particular office when what is at stake is the integrity of [the] system." *State Bd. of Retirement* v. *Bulger*, 446 Mass. at 180.

Here, Tyler was sentenced to prison for repeatedly sexually abusing young victims, the very type of criminal behavior he was required by law to report. His convictions are directly related to his position as a firefighter and EMT because they demonstrate a violation of the public's trust as well as a repudiation of his official duties. Clearly, this is not a case where the words of the statute are "stretched to accomplish a result not expressed." *Collatos, supra* at 687. Contrast *Herrick* v. *Essex Regional Retirement Bd.*, 77 Mass. App. Ct. 645, 654 (2010) (criminal behavior of a custodian, convicted of indecent assault and battery of his daughter, not directly linked with his job); *Scully* v. *Retirement Bd. of Beverly*, 80 Mass. App. Ct. 538, 543-545 (2011) (action of a library employee, who kept images of child pornography on his home computer, did not present the type of direct link intended by the Legislature).

I conclude that Tyler's convictions involved violations of the laws applicable to his positions as firefighter and EMT pursuant to G. L. c. 32, § 15(4), and mandated the forfeiture of his retirement allowance.