NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-965                                              Appeals Court

STATE BOARD OF RETIREMENT  vs.  BRIAN O'HARE & another.[1]

No. 16-P-965.

Suffolk.     September 8, 2017. - December 15, 2017.

Present:  Rubin, Neyman, & Henry, JJ.

Retirement.  Public Employment, Forfeiture of pension, Police.
    Police, Regulations.  Police Officer.  State Police.

Civil action commenced in the Superior Court Department on January 29, 2015.

The case was heard by Peter M. Lauriat, J., on motions for judgment on the pleadings.

David R. Marks, Assistant Attorney General, for State Board of Retirement.
Eric B. Tennen for Brian O'Hare.

HENRY, J.  Brian O'Hare was a sergeant with the

Massachusetts State police when he committed the Federal crime

of using the internet to entice a person under eighteen to

engage in unlawful sexual activity, a charge to which he

_____

[1] The Justices of the Cambridge District Court Department (as nominal parties).

subsequently pleaded guilty. This case presents the question whether the State Board of Retirement (board) correctly ordered forfeiture of O'Hare's retirement allowance under G. L. c. 32, § 15(4).[2] General Laws c. 32, § 15(4), inserted by St. 1987, c. 697, § 47, provides that "[i]n no event shall any member [of the State employees' retirement system] after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance." Because we hold that O'Hare's actions had a direct legal link to his position with the State police, we conclude that O'Hare's conviction required forfeiture pursuant to § 15(4).

Background. Brian O'Hare served with the Massachusetts State police for twenty years and, in 2006, held the rank of sergeant and was a patrol supervisor and shift commander. Between August, 2005, and February, 2006, O'Hare communicated online with an individual whom he believed to be a fourteen year old boy. O'Hare used a family computer while off duty to communicate with the "youth." The youth was later revealed to be an undercover Federal Bureau of Investigation (FBI) agent.

In February, 2006, O'Hare was arrested by the FBI after arriving at a prearranged meeting place to meet the youth for

---

[2] This case was paired for argument with Dell'Isola v. State Bd. of Retirement, 92 Mass. App Ct.     (2017).

sexual purposes. In October, 2006, O'Hare resigned from the State police while under Federal indictment. In February, 2007, O'Hare pleaded guilty to one charge of using the internet to attempt to coerce and entice a child under the age of eighteen to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b).

After O'Hare's conviction, the board held a hearing and denied O'Hare a retirement allowance under G. L. c. 32, § 15(4).[3] O'Hare filed a timely complaint for judicial review in the District Court, where a judge of that court reversed the board's decision on the ground that O'Hare's offense did not involve a violation of law applicable to his position with the State police. The board filed for certiorari review by the Superior Court, where a judge upheld the District Court's decision. The board then appealed to this court.

Discussion. Judicial review pursuant to G. L. c. 249, § 4, is in the nature of certiorari and is limited, "allow[ing] a court to 'correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the

---

[3] After the hearing officer entered recommended findings and a decision, O'Hare filed a motion for reconsideration after this court issued decisions in Retirement Bd. of Maynard v. Tyler, 83 Mass. App. Ct. 109, 112-113 (2013), and Durkin v. Boston Retirement Bd., 83 Mass. App. Ct. 116 (2013). The hearing officer denied the motion. The board then accepted the recommended findings and decision.

[member]. . . . In its review, the court may rectify only those errors of law which have resulted in manifest injustice to the [member] or which have adversely affected the real interests of the general public.'" State Bd. of Retirement v. Bulger, 446 Mass. 169, 173 (2006), quoting from Massachusetts Bay Transp. Authy. v. Auditor of the Commonwealth, 430 Mass. 783, 790 (2000).

As the purpose and operation of § 15(4) has been recently and thoroughly reviewed in State Bd. of Retirement v. Finneran, 476 Mass. 714 (2017), we proceed directly to the question whether there was a direct factual or legal link between O'Hare's criminal conviction and his position. Given that there was no evidence that O'Hare used the resources of his position to commit the crime, the board focuses on the existence of a legal link.

A legal link exists "when a public employee commits a crime directly implicating a statute that is specifically applicable to the employee's position. . . . The requisite direct legal link is shown where the crime committed is 'contrary to a central function of the position as articulated in applicable laws.'" Finneran, 476 Mass. at 721, quoting from Garney v. Massachusetts Teachers' Retirement Sys., 469 Mass. 384, 391 (2014). Thus, for example, the Supreme Judicial Court held that a member forfeited his pension as a city alderman when he, in

his subsequent position as register of probate, embezzled funds from that office in violation of the Code of Professional Responsibility for Clerks of Courts.  See Retirement Bd. of Somerville v. Buonomo, 467 Mass. 662, 664-666 (2014).

Similarly, in Bulger, supra, forfeiture was warranted when a clerk-magistrate committed perjury and obstruction of justice in an arguably personal matter.  When he committed those crimes "he violated the fundamental tenets of the code and of his oath of office" -- at the heart of which "is the unwavering obligation to tell the truth, to ensure that others do the same through giving of oaths to complainants, and to promote the administration of justice."  Id at 179.  "[T]he nature of [his] particular crimes cannot be separated from the nature of his particular office when what is at stake is the integrity of our judicial system," and forfeiture was required.  Id. at 180.

Recently, in Essex Regional Retirement Bd. v. Justices of the Salem Div. of the Dist. Ct. Dept. of the Trial Court, 91 Mass. App. Ct. 755, 756-757 (2017), this court found that forfeiture was required where a police officer, while off duty, used a personal firearm to threaten his wife's life and, after she left the home, fired into a door.  Such action "directly violated the public's trust and was a repudiation of his official duties."  Id. at 760.

Here, the board invites us to conclude that the laws applicable to the office or position of State trooper include the rules and regulations of a code of conduct. These regulations require, among other things, that troopers avoid conduct "which brings the Massachusetts State [p]olice into disrepute or reflects discredit upon the person as a member of the Massachusetts State [p]olice." The regulations also require State troopers to obey all of the laws of the United States and of the local jurisdiction in which the trooper is present.[4] Because this would have the effect of making any violation of law mandate forfeiture, which the Supreme Judicial Court has already held is not permissible, see Bulger, 446 Mass. at 178-179, we decline the invitation.

Nonetheless, in evaluating forfeiture cases involving law enforcement personnel, we have acknowledged the special position of law enforcement officers:

> "Police officers must comport themselves in accordance with the laws that they are sworn to enforce and behave in a manner that brings honor and respect for rather than public distrust of law enforcement personnel. . . . In accepting employment by the public, they implicitly agree that they will not engage in conduct which calls into question their ability and fitness to perform their official responsibilities."

---

[4] Pursuant to G .L. c. 22C, §§ 3 and 10, the Colonel of the State police has promulgated rules and regulations that function as a code of conduct.

Attorney Gen. v. McHatton, 428 Mass. 790, 793-794 (1999), quoting from Police Commr. of Boston v. Civil Serv. Commn., 22 Mass. App. Ct., 364, 371 (1986). "This applies to off-duty as well as on-duty officers." Falmouth v. Civil Serv. Commn., 61 Mass. App. Ct. 796, 801 (2004).

O'Hare's position as a law enforcement officer distinguishes this case from other cases in which a member was convicted of a crime involving children, but the Supreme Judicial Court and this court in those cases held that the criminal offense did not fall within the purview of § 15(4). In Garney, 469 Mass. at 394-395, the Supreme Judicial Court held that pension forfeiture was not warranted where a teacher possessed child pornography, a crime that endangers children generally, but did not use his status as a teacher, or involve the students he taught, or even the district for which he worked. Similarly, in Tyler, 83 Mass. App. Ct. 109, 113 (2013), this court held that the narrow scope of § 15(4) precluded pension forfeiture for a fire fighter who had sexually abused young boys. His essential duty as a fire fighter was to extinguish fires and to protect life and property. In Tyler, Garney, and Essex Regional Retirement Bd., the fundamental nature of each position was key in determining pension forfeiture.

As in Essex Regional Retirement Bd., 91 Mass. App. Ct. at 760, we face the difficulty of considering the fact that any and all violations of law do not necessarily mandate forfeiture, see Bulger, 446 Mass. at 178-179, and the fact that "police officers voluntarily undertake to adhere to a higher standard of conduct . . . than ordinary citizens." Essex Regional Retirement Bd., 91 Mass. App. Ct. at 761.

When pressed to determine the line, the board at oral argument ventured that a conviction for trespassing or perhaps operating a motor vehicle under the influence might not warrant pension forfeiture. This may have been an effort to delineate a moral or mens rea line in various crimes. We need not speculate on the full reach of section 15(4) for crimes committed by State troopers, however, because O'Hare's crime involved intentional action that would cause significant harm to a child.[5] O'Hare's egregious actions are in violation of the fundamental tenets of his role as a State police officer, where the protection of the vulnerable, including children, is at the heart of a police officer's role, and this repudiation of his official duties

---

[5] Similarly, because the member here was a State trooper, we need not confront what could be a difficult question of determining who is a law enforcement officer. For example, the Attorney General is "the chief lawyer and law enforcement officer of the Commonwealth of Massachusetts" and therefore arguably at least some assistant attorneys general are law enforcement officers. https://www.mass.gov/orgs/office-of-attorney-general-maura-healey [https://perma.cc/9WMH-S3TC].

violated the public's trust and the integrity of the State police. See Bulger, 446 Mass. 180.[6] See also Durkin v. Boston Retirement Bd., 83 Mass. App. Ct. 116, 119 (2013) ("[A]t the heart of a police officer's role is the unwavering obligation to protect life").[7] O'Hare's argument that his position of patrol supervisor and shift commander at the time of the offense meant that he was not responsible for policing crimes against children is not persuasive because it relies on the happenstance of a particular job assignment at the time of the crime and parses too fine a line for the central tenets of a law enforcement officer's position.

The judgment is reversed, and a new judgment shall enter in the Superior Court in favor of the board.

So ordered.

---

[6] We reiterate that not every criminal conviction, and not even every conviction involving a law enforcement officer, necessitates forfeiture. See Durkin, 83 Mass. App. Ct. at 119, n.5.

[7] In Durkin, 83 Mass. App. Ct. at 119, forfeiture was similarly required when a police officer shot a fellow officer using a department-issued firearm. Although the court discussed the fundamental nature of the police officer's position, forfeiture in Durkin was based on a factual link, not a legal link.