NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-963                                        Appeals Court

MICHAEL DELL'ISOLA  vs.  STATE BOARD OF RETIREMENT
another[1].


No. 16-P-963.

Suffolk.     September 8, 2017. - December 15, 2017.

Present:  Rubin, Neyman, & Henry, JJ.


Retirement.  Public Employment, Forfeiture of pension.
     Correction Officer.



     Civil action commenced in the Superior Court Department on
December 31, 2014.

     The case was heard by Linda E. Giles, J., on motions for
judgment on the pleadings.


     David R. Marks, Assistant Attorney General, for State Board
of Retirement.
     Nicholas Poser for the plaintiff.


     HENRY, J.  Michael Dell'Isola was a correction officer when

he committed the crime of possession of cocaine.  The State

Retirement Board (board) subsequently conducted a hearing and

made factual findings that Dell'Isola came into possession of

_____

     [1] The Justices of the Boston Municipal Court Department.

the cocaine only as a result of an arrangement with an inmate who had been in his custody and who at the time remained in the custody of the Middlesex County sheriff's office.  This case thus requires us to consider whether, pursuant to G. L. c. 32, § 15(4), Dell'Isola's conviction requires forfeiture of his retirement allowance.[2]  General Laws c. 32, § 15(4), inserted by St. 1987, c. 697, § 47, provides that "[i]n no event shall any member [of the State employees' retirement system] after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance."  Because how Dell'Isola came into possession of the cocaine was factually linked to his position as a correction officer, we hold that his criminal offense falls within the purview of § 15(4) and he is ineligible to receive a retirement allowance.

Background.  In September, 2012, a jury convicted Dell'Isola of one charge of possession of cocaine.  The board later held a hearing regarding Dell'Isola's application for a superannuation allowance.  The board made the following findings of fact based on an evidentiary hearing and largely based on a transcript of Dell'Isola's own statements during a postarrest interview with the State police.

---

[2] This case was paired for argument with State Bd. of Retirement v. O'Hare, 92 Mass. App. Ct.         (2017).

In 2011, Dell'Isola was a sergeant and a senior correction officer with the Middlesex County sheriff's office, having served in the office since 1982. An inmate under Dell'Isola's supervision at the Middlesex County jail in Cambridge, identified only as "George," offered Dell'Isola "a large amount of cash" and told Dell'Isola to contact George's mother.[3] Dell'Isola met with George's mother at a Dunkin' Donuts and received $1,000 from her. George was later transferred to the Billerica house of correction, another facility overseen by the Middlesex County sheriff's office. While Dell'Isola was speaking by telephone with a fellow officer at that Billerica facility, George, who was with that officer,[4] shouted that Dell'Isola should call George's mother. Dell'Isola subsequently called George's mother, who told Dell'Isola that she first needed to speak with George. George's mother later told Dell'Isola he needed to speak with George's "cousin," who later

---

[3] The board did not make findings as to why George offered this money. The board did find that Dell'Isola acknowledged that he had a conversation with George regarding drug dealing, and that he acknowledged considering to act as an intermediary with George and the dealers he already knew. While the board noted that the record "strongly suggests that the agreement with George included an agreement regarding cocaine," the board did not make a finding on this question and the point was not critical to the decision.

[4] The identify of that officer was not confirmed.

called Dell'Isola.[5] The cousin told Dell'Isola that he heard that Dell'Isola was "looking," and asked if he wanted "some" and if he wanted it "flake" or "solid." Dell'Isola responded that he would take half "flake" and half "solid." They agreed for the cousin to give Dell'Isola an ounce of cocaine as well as $2,500 in cash.

In May, 2011, Dell'Isola, while off duty, met George's cousin at a Starbucks in Woburn. Dell'Isola did receive from the cousin the expected money, which he concedes he and George had previously agreed would occur, and one ounce of cocaine. After Dell'Isola left the Starbucks he was immediately arrested. The cousin was revealed to be an undercover State police trooper.

Dell'Isola was arrested on a charge of trafficking in over twenty-eight grams of cocaine, in violation of G. L. c. 94C, § 31(a)(4); he was convicted of the lesser-included offense of possession of cocaine. He was not charged related to the receipt of money from George, either via George's mother or his "cousin."

The board determined that, given the facts and circumstances of the conviction, in particular Dell'Isola's relationship and arrangements with the inmate George, Dell'Isola

---

[5] The record is not clear if Dell'Isola was on or off duty when speaking with the inmate's mother and cousin.

forfeited his retirement allowance under § 15(4).  A judge of the Boston Municipal Court affirmed the board's decision. Dell'Isola filed for certiorari review by the Superior Court, which reversed the judgment issued from the Boston Municipal Court, and vacated the decision.[6]  The board then appealed to this court.

Discussion. a. The record.  As a preliminary matter, we acknowledge the procedural posture of this case.  In the vast majority of pension forfeiture cases, the member of the State employees' retirement system pleads guilty to one or more criminal charges, and the facts at the forfeiture hearing are not disputed.  See, e.g., State Bd. of Retirement v. Finneran, 476 Mass. 714, 716 n.3 (2017).  In contrast, Dell'Isola's hearing followed a criminal jury trial, and the jury did not need to consider the connection between Dell'Isola's job and his possession of cocaine.  The question is to what extent the board may consider evidence beyond the record established at Dell'Isola's criminal trial.

In determining the applicability of G. L. c. 32, § 15(4), the board is authorized to make factual findings and may admit

---

[6] The Boston Municipal Court and Suffolk Superior Court decisions were entered prior to the release and without the benefit of both State Bd. of Retirement v. Finneran, 476 Mass. 714 (2017), and Essex Regional Retirement Bd. v. Justices of Salem Div. of Dist. Ct. Dept. of the Trial Ct., 91 Mass. App. Ct. 755 (2017).

and give probative weight to "the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." G. L. c. 30A, § 11(2), inserted by St. 1954, c. 681, § 1. The hearing officer may assign probative value to evidence "only if it bears the requisite 'indicia of reliability.'" Scully v. Retirement Bd. of Beverly, 80 Mass. App. Ct. 538, 545 n.9 (2011), quoting from Doherty v. Retirement Bd. of Medford, 425 Mass. 130, 140 (1997).

Here, Dell'Isola argues that the board improperly admitted copies of his postarrest interview transcript and the arrest report, because both were hearsay and neither was certified as a copy of an exhibit admitted at the criminal trial, so they cannot be assumed to be facts that the jury considered in convicting him. See Retirement Bd. of Somerville v. Buonomo, 467 Mass. 662, 666 n.9 (2014). An assistant district attorney handling Dell'Isola's criminal case emailed both documents to counsel for the board, who offered both documents in evidence at the hearing. At oral argument, Dell'Isola conceded both that the board may make factual findings based on properly admitted evidence, and that the transcript was "probably" properly before the court.

Although the exhibits were hearsay, that alone does not undercut their admissibility and reliability. See Embers of Salisbury, Inc. v. Alcoholic Bev. Control Commn., 401 Mass. 526,

530-531 (1988) (agency decision based on hearsay evidence, including trial transcript and stipulation as to anticipated testimony of witnesses); Commonwealth v. Durling, 407 Mass. 108, 120-122 (1990) (revocation of probation based on two police reports read in court and accepted in evidence); Costa v. Fall River Housing Authy, 453 Mass. 614, 627 (2009) (hearsay evidence may form basis of administrative decision). The hearing officer and the board found that both documents had the requisite indicia of reliability. The transcript bore a signature and certification from an approved court transcriber. Dell'Isola himself offered the statements in the interview after he was advised of his right to remain silent, and the statements were consistent with the narrative of events presented in other documents. As to the police report, there was no suggestion that the trooper who filed the report had a personal interest in the case. The report contained observations and actions from that trooper, and the narrative was consistent with other evidence presented. The hearing officer also noted areas in both exhibits that were assigned decreased probative weight, including inaudible sections of the interview, and statements in the arrest report that were relayed from other officers. We discern no error in the admission of either document.

Dell'Isola further contends that, even if the documents were admissible, they do not establish the facts underlying his

conviction. He asserts that the board can consider only evidence that the jury considered at his criminal trial, relying on Scully, 80 Mass. App. Ct. at 543, where we held that a direct link could not be established relying on facts from charges that were dismissed or nol prossed in connection with a plea bargain. Dell'Isola, however, overreads Scully. While forfeiture cannot be based on criminal conduct that did not result in a conviction, nothing in Scully prevents the board from considering the facts related to how Dell'Isola came into possession of the cocaine. In Scully, we questioned the reliability of a statement provided by a minor to police, but assumed for the sake of argument that it was reliable. Id. at 545 n.9. Even with that assumption, the record did not support forfeiture because there was no direct link between the crime Scully committed and his position at his workplace. We did not, however, restrict the board from considering the police report or like documents. In this case, the exhibits present a sufficient indicia of reliability, and we similarly do not restrict the board from making findings from the facts that they present. The question therefore is not whether the board could draw facts from these documents, but rather whether those facts establish a direct link between Dell'Isola's position as a correction officer and the crime for which he was convicted.

b.  Forfeiture pursuant to G. L. c. 32, § 15(4).  Judicial review pursuant to G. L. c. 249, § 4, is in the nature of certiorari and is limited, "allow[ing] a court to 'correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the [member]. . . .  In its review, the court may rectify only those errors of law which have resulted in manifest injustice to the [member] or which have adversely affected the real interests of the general public.'"  State Bd. of Retirement v. Bulger, 446 Mass. 169, 173 (2006), quoting from Massachusetts Bay Transp. Authy. v. Auditor of the Commonwealth, 430 Mass. 783, 790 (2000).

As the purpose and operation of § 15(4) has been recently and thoroughly reviewed in Finneran, supra, we proceed directly to the question whether there was a direct factual or legal link between Dell'Isola's conviction and his position.  A factual link exists only "where there is a direct factual connection between the public employee's crime and position."  Finneran, 476 Mass. at 720.  "The nexus required by G. L. c. 32, § 15(4), is not that the crime was committed while the member was working, or in a place of work, but only that the criminal behavior be connected with the member's position."  Durkin v. Boston Retirement Bd., 83 Mass. App. Ct. 116, 119 (2013).

Dell'Isola asserts that the connection between his position as a correction officer and his conviction for possession of

cocaine are not factually connected. He argues that the inmate was no longer under his supervision and that no evidence establishes that the inmate arranged for Dell'Isola to receive cocaine. Instead, he frames the transaction as one between Dell'Isola and the cousin alone, where the cousin contacted Dell'Isola and initiated a conversation about cocaine, prompting their meeting to conduct a separate transaction while Dell'Isola was off duty and away from his place of employment. He contends that this was a transaction that occurred without use of office resources and without any connection to the inmate. See Scully, 80 Mass. App. Ct. at 543; Retirement Bd. of Maynard v. Tyler, 83 Mass. App. Ct. 109, 112-113 (2013). While he concedes that an agreement for money existed, this was uncharged conduct.

We have previously held that no factual connection existed when a firefighter sexually abused young boys, where the crimes occurred outside of the firehouse while the member was off duty, and "there was no evidence that [the member] used his position, uniform, or equipment for the purposes of his indecent acts." Ibid.

Likewise, we found no factual connection when a library employee pleaded guilty to possession of child pornography, where the member neither stored nor accessed the images on library computers, nor did he use his position at the library to facilitate that crime. See Scully, supra. The board could not

rely on conduct that did not result in a conviction to establish a direct link.  Id. at 544.

In contrast, a direct factual connection existed when the superintendent of the municipal water and sewer department stole money from the town, and when a city employee broke into city hall and stole documents from his own personnel file to improve his chances of being reappointed to his position.  See Gaffney v. Contributory Retirement Appeal Bd., 423 Mass. 1, 4-5 (1996); Maher v. Justices of Quincy Div. of Dist. Ct. Dept., 67 Mass. App. Ct. 612, 616-617 (2006), S.C., 452 Mass. 517 (2008), cert. denied, 556 U.S. 1166 (2009).

Most recently, in Finneran, 476 Mass. at 721-722, the Supreme Judicial Court held that a direct factual link existed, requiring forfeiture, where the former Speaker of the House pleaded guilty to obstruction of justice related to false testimony he had given about a redistricting plan.  The link existed where the false testimony directly related to his position as Speaker of the House and his work on the redistricting act, and where his admitted motivation in providing false testimony was meant to "vindicate his conduct" as Speaker.  As the Supreme Judicial Court concluded:

> "While [his] offense itself does not directly implicate his
> duties as Speaker of the House, it is nonetheless
> inextricably intertwined with his position. Simply put, it
> is only because he had been Speaker of the House at the
> relevant time that he was in a position to testify as to

> the genesis of the redistricting plan and to do so falsely."

Id. at 722.

The decision in Finneran compels the outcome here, where "[Dell'Isola's] crime directly concerns actions that he had carried out when he served . . . in his role . . . ." Id. at 721-722. Here, Dell'Isola's actions were "inextricably intertwined" with his position as a correction officer. Although the transaction with the cousin occurred while Dell'Isola was off duty and off location, it followed only as a direct result of Dell'Isola's communications with, and on behalf of, an inmate who continued to be in custody, albeit in a different facility. Dell'Isola came to know and communicate with the inmate as a result of his work as a correction officer, and used those continued communications while the inmate remained in custody, to obtain cocaine.

Furthermore, the board determined that Dell'Isola believed that he would be meeting someone acting on the inmate's behalf, based on the previous transaction where the inmate offered money through his mother. By Dell'Isola's own admission during the postarrest interview, he expected to receive both money and cocaine during the transaction with the cousin. Unlike in Scully, 80 Mass. App. Ct. at 543, where it was insufficient that "some work-related conduct spark[ed] an investigation," the

factual link is not based on the uncharged receipt of money.
Rather, that conduct simply illuminates the manner in which
Dell'Isola and the inmate conducted transactions.  The cousin
may have been the first to mention cocaine on the telephone, but
Dell'Isola's own retelling of that conversation indicated that
there were prior conversations about cocaine, based on the
cousin already having heard that Dell'Isola was "looking."
Dell'Isola's use of his position is not diminished because he
came into possession of the cocaine through a series of
communications facilitated by the inmate and not through a
direct transaction with him.

We therefore conclude that the board's decision was
supported by substantial evidence, and that G. L. c. 32,
§ 15(4), and the case law interpreting it mandate forfeiture
where Dell'Isola was convicted of possession of cocaine under
the facts of this case.[7]

Conclusion.  As there was a direct factual link between
Dell'Isola's position as a public employee and his criminal

---

[7] Because we conclude that a direct factual link exists, we
do not address the question whether there is a direct legal
link.  A legal link exists "when a public employee commits a
crime directly implicating a statute that is specifically
applicable to the employee's position. . . .  The requisite
direct legal link is shown where the crime committed is
'contrary to a central function of the position as articulated
in applicable laws.'"  Finneran, supra at 721, quoting from
Garney v. Massachusetts Teachers' Retirement Sys., 469 Mass.
384, 391 (2014).

conviction for the possession of cocaine, the judgment of the Superior Court is reversed.  The matter is remanded for consideration of Dell'Isola's Eighth Amendment claim that pension forfeiture would be an excessive fine.

<u>So ordered</u>.