NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12069


  STATE BOARD OF RETIREMENT  vs.  THOMAS M. FINNERAN & others.[1]



        Suffolk.      December 8, 2016. - April 5, 2017.

   Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, & Budd,
                              JJ.[2]



Retirement.  State Board of Retirement.  Public Employment,
     Forfeiture of retirement benefits.  Constitutional Law,
     Excessive fines clause.  Practice, Civil, Action in nature
     of certiorari.




     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on December 4, 2015.

     The case was reported by Lenk, J.


     David R. Marks, Assistant Attorney General, for the
plaintiff.
     Nicholas Poser (Thomas R. Kiley also present) for Thomas M.
Finneran.


---

[1] Justices of the Dorchester Division of the Boston
Municipal Court Department, as nominal parties.

[2] Justice Botsford participated in the deliberation on this
case prior to her retirement.

LENK, J. Former Speaker of the House Thomas Finneran pleaded guilty in the United States District Court in 2007 to one count of obstruction of justice in violation of 18 U.S.C. § 1503. The obstruction of justice conviction related to false testimony that he had provided in relation to a Federal court action challenging the 2001 redistricting act, St. 2001, c. 125 (redistricting act). Finneran had played a significant role in the development of the redistricting act from the point of its inception but denied under oath that he had played any part in its development. Indeed, he testified that he had not even seen the plan before it was released to the full House of Representatives.

After his conviction, Finneran was informed by the State Retirement Board (board) that his crime constitutes a "violation of the laws applicable to his office or position," pursuant to G. L. c. 32, § 15 (4), requiring the forfeiture of his pension. Finneran appealed from the board's determination to the Boston Municipal Court. A Boston Municipal Court judge reversed, discerning no direct link between Finneran's "conviction and his position as a Member and/or Speaker of the House." We reach the opposite conclusion, and accordingly reverse the decision of the Boston Municipal Court judge and affirm the conclusion of the board.

1. Background.[3] Finneran was first elected to the House of Representatives in 1978, as the representative of the Twelfth Suffolk District. Thereafter, he was reelected every two years, and concurrently served as Speaker of the House from 1996 until his resignation in 2004.

In 2001, Finneran played a key role in shepherding the Commonwealth through the redistricting process pursuant to the 2000 decennial United States census. The Legislature bore the responsibility of revising the Commonwealth's legislative districts to account for the change in population reflected in the census. Toward that end, the Legislature established a joint committee (committee) comprised of members of the Senate and House of Representatives to put together a redistricting plan. Finneran, as Speaker, appointed the House members of the committee. He also took part in the planning process and was consulted in regard to "virtually all" of the difficult decisions concerning the committee's redistricting plan.

One week before the plan was released to the full House, Finneran convened and attended a meeting concerning the redistricting plan. At that meeting, he reviewed the proposed plan in detail and suggested several changes to it that

---

[3] The facts, which the parties do not materially dispute, are taken from the Boston Municipal Court judge's decision and the administrative record, including the plea colloquy in the Federal court.

pertained to his own district, at least some of which became part of the final redistricting plan. In the days leading up to the release of the plan, Finneran met with several of his fellow House members and explained to them how it would affect their districts. Shortly after the joint committee released the redistricting plan to the full House, then Acting Governor Jane Swift signed the redistricting act, enacting the plan into law on November 8, 2001.[4] The redistricting act, among other things, increased the proportion of eligible white voters in Finneran's House district.

In June, 2002, a group of African-American and Latino voters filed a lawsuit in the United States District Court for the District of Massachusetts against Finneran, then Secretary of the Commonwealth William Galvin, and Acting Governor Swift,[5] challenging the redistricting act as it applied to House districts in the Boston area. They contended that the House districts were redrawn with the purpose of limiting the voting power of African-American and Latino voters, in violation of the equal protection clause of the Fourteenth and Fifteenth Amendments to the United States Constitution, and that the redistricting act had a discriminatory effect against such

---

[4] The plan did not change significantly between the time it was released to the full House and when it was signed into law.

[5] The plaintiffs sued all of the defendants in their official capacities.

voters in violation of the Voting Rights Act, 42 U.S.C. § 1973(b).  In particular, they argued that Finneran's Twelfth Suffolk District was redrawn to decrease the number of minority voters in the district and "super-pack" the neighboring Sixth Suffolk District with African-American, Latino, and other minority voters.  In May, 2003, the plaintiffs filed an amended complaint naming only Secretary Galvin as a defendant.  The case was tried before a three-judge panel appointed by the Chief Judge of the United States Court of Appeals for the First Circuit.

Finneran was deposed during the course of the lawsuit, and testified voluntarily on behalf of the defense in November, 2003.  The plaintiffs cross-examined Finneran on, among other things, the role he played in relation to the formation of the redistricting act and, in particular, any effort he had undertaken or role he had had in facilitating the changes made to his House district.  In his testimony, Finneran conceded that he had engaged in communications with the House members on the redistricting committee, but denied any substantive knowledge of the redistricting plan prior to its publication to the full House.  When asked whether he had reviewed "any of the redistricting plans as the process proceeded," Finneran responded, "Not as the process proceeded. No sir."  Finneran subsequently falsely testified that he first

saw the redistricting plan after it was released to the full House.

In February, 2004, the Federal District Court panel ruled for the plaintiffs on the ground that the redistricting act had resulted in a discriminatory impact on African-American voters, in violation of the Voting Rights Act. Black Political Task Force v. Galvin, 300 F. Supp. 2d 291, 294 (D. Mass. 2004).[6] The panel also stated in a footnote that "[a]lthough Speaker Finneran denied any involvement in the redistricting process, the circumstantial evidence strongly suggests the opposite conclusion." Id. at 295 n.3. One year later, in June, 2005, a Federal grand jury indicted Finneran on three counts of perjury and one count of obstruction of justice in relation to his false deposition testimony.[7] On January 5, 2007, Finneran pleaded

---

[6] As a result of this conclusion, the court did not reach the plaintiffs' constitutional arguments. Black Political Task Force v. Galvin, 300 F. Supp. 2d 291, 294 (D. Mass. 2004).

[7] The charge of obstruction of justice alleged that Finneran had provided "misleading and false statements" in his testimony concerning

"(a) whether [he] had reviewed and seen a redistricting plan before the [c]ommittee plan was filed with the Clerk of the House of Representatives . . . ; (b) when [Finneran] first had information about the [c]ommittee's proposed changes to the [Twelfth] Suffolk District . . . ; (c) whether [Finneran] spoke with [the committee chairman] about any matters relating to the configuration of the [Twelfth] Suffolk District . . . ; (d) whether [Finneran] had knowledge of the scope of the work performed by [attorney] Lawrence DiCara in the crafting of the

guilty to obstruction of justice, in violation of 18 U.S.C. § 1503, and received a sentence of eighteen months of probation and a $25,000 fine.[8]

In January, 2007, the board ceased payments of Finneran's pension on the ground of his conviction, pursuant to G. L. c. 32, § 15 (4).[9] Following a hearing in April, 2012, the hearing officer concluded that Finneran's pension is forfeit under G. L. c. 32, § 15 (4), because he had "been convicted of a

---

[c]ommittee plan . . . ; (e) whether [Finneran] had information within his custody and control regarding the racial characteristics of the precincts he lost in redistricting and the precincts he gained in redistricting, other than that to which he testified in his deposition . . . ; (f) the extent of [Finneran's] knowledge, at the time of his deposition, regarding what neighborhoods were removed from the [Twelfth] Suffolk District during redistricting, [and] the areas that were added to the [Twelfth] Suffolk District during redistricting . . . ; and (g) whether [Finneran] had within his custody and control a calendar which recorded campaign activities or events, including fundraisers, held by or on his behalf . . . ."

[8] The three perjury charges were dismissed as part of Finneran's plea bargain.

[9] General Laws c. 32, § 15 (4), provides:

"In no event shall any member after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance under the provisions of [§§ 1 to 28], inclusive, nor shall any beneficiary be entitled to receive any benefits under such provisions on account of such member. The said member or his beneficiary shall receive, unless otherwise prohibited by law, a return of his accumulated total deductions; provided, however, that the rate of regular interest for the purpose of calculating accumulated total deductions shall be zero."

criminal offense involving violation of the laws applicable to his office or position."  The hearing officer's conclusion rested on three primary grounds:  (1) Finneran had testified in his official capacity; (2) the "subject matter of his testimony was . . . directly tied to his official duties;" and (3) "Finneran's duties as a legislator and the mandate of his oath [to uphold the Constitution of the United States and the Constitution of the Commonwealth] . . . gave him a heightened obligation to be forthcoming with the Court" given that the case concerned the right to vote.  The board subsequently voted to accept the hearing officer's decision.

Finneran appealed to the Boston Municipal Court under G. L. c. 32, § 16 (3).  A Boston Municipal Court judge reversed the board's decision, concluding that Finneran's conviction does not bear "a direct factual link to his position as a House Member and/or Speaker" and that "there is no substantial evidence to support the [b]oard's conclusion that Finneran's conviction violated a core function of his position as a House Member and/or Speaker because there is no evidence in the record of any code, rule or law applicable to Finneran's public position that connects his conviction with his office."  The board filed a complaint in the nature of certiorari in the county court, pursuant to G. L. c. 249, § 4, asserting that the Boston Municipal Court judge had committed an error of law in ruling

that there is no "direct link between the criminal offense Finneran committed . . . and his official duties as a Member and Speaker of the Massachusetts House of Representatives."  A single justice reserved and reported the matter to the full court.

2.  Discussion.  The primary question before us is whether Finneran's pension is subject to forfeiture under G. L. c. 32, § 15 (4).  Finneran also contends that, even if we were to determine that forfeiture is appropriate under the statute, it nonetheless would constitute an excessive fine in violation of the Eighth Amendment to the United States Constitution.  We consider each issue in turn.

a.  Standard of review.  General Laws c. 249, § 4, "provides for limited judicial review in the nature of certiorari to correct errors of law in administrative proceedings where judicial review is otherwise unavailable."  State Bd. of Retirement v. Bulger, 446 Mass. 169, 173 (2006) (Bulger).  We may "correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff . . . [and] may rectify only those errors of law which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public."  Garney v. Massachusetts Teachers' Retirement Sys., 469 Mass. 384, 388 (2014),

quoting Massachusetts Bay Transp. Auth. v. Auditor of the
Commonwealth, 430 Mass. 783, 790 (2000).

b.  Forfeiture pursuant to G. L. c. 32, § 15 (4).  The
gravamen of the board's argument is that Finneran's conviction
of obstruction of justice concerns a "violation of the laws
applicable to his office or position" under G. L. c. 32,
§ 15 (4), and that his pension is thereby forfeit.  General Laws
c. 32, § 15 (4), provides that "[i]n no event shall any member
[of the State employees' retirement system] after final
conviction of a criminal offense involving violation of the laws
applicable to his office or position, be entitled to receive a
retirement allowance."

Our review of G. L. c. 32, § 15 (4), "is guided by the
familiar principle that 'a statute must be interpreted according
to the intent of the Legislature ascertained from all its words
construed by the ordinary and approved usage of the language,
considered in connection with the cause of its enactment, the
mischief or imperfection to be remedied and the main object to
be accomplished, to the end that the purpose of its framers may
be effectuated.'"  Retirement Bd. of Somerville v. Buonomo, 467
Mass. 662, 668 (2014) (Buonomo), quoting Hanlon v. Rollins, 286
Mass. 444, 447 (1934).  Section 15 (4) "is considered to be
penal" in nature, and "its language must be construed narrowly,

not stretched to accomplish an unexpressed result."  See Bulger, 446 Mass. at 174-175.

Section 15 (4) was enacted in response to this court's decision in Collatos v. Boston Retirement Bd., 396 Mass. 684 (1986), and was adopted to "broaden the range of crimes that would lead to pension forfeiture."  See Gaffney v. Contributory Retirement Appeal Bd., 423 Mass. 1, 3 (1996).  In that case, we observed that § 15 (4) was not meant to "operate only in cases of violations of highly specialized crimes addressing official actions," nor to facilitate forfeiture "as a sequelae of any and all criminal convictions."  Id. at 4-5.  Rather, "[l]ooking to the facts of each case for a direct link between the criminal offense and the member's office or position best effectuates the legislative intent of § 15 (4)."  Id. at 5.  "This 'direct link' requirement 'does not mean that the crime itself must reference public employment or the employee's particular position or responsibilities,' . . . or that the crime necessarily must have been committed at or during work."  See Garney, 469 Mass. at 389, quoting Maher v. Justices of the Quincy Div. of the Dist. Court Dep't, 67 Mass. App. Ct. 612, 616 (2006).  Rather, the "substantive touchstone intended by the General Court is criminal activity connected with the office or position."  Gaffney, 423 Mass. at 4.

The "direct link" standard discussed in Gaffney blossomed into two separate lines of cases concerning when forfeiture under § 15 (4) would be appropriate. What has emerged are two recognized types of "direct links" between a public employee's position and the crime committed: factual links and legal links.

i. Factual links. In cases involving factual links, a public employee's pension is subject to forfeiture under § 15 (4) only where there is a direct factual connection between the public employee's crime and position. See Gaffney, 423 Mass. at 4-5 (superintendent of municipal water and sewer department who stole money from town was subject to pension forfeiture); Durkin v. Boston Retirement Bd., 83 Mass. App. Ct. 116, 116-117, 119 (2013) (police officer who used department-issued firearm to shoot fellow officer while off duty was subject to pension forfeiture); Maher, 67 Mass. App. Ct. at 613, 616-617 (city employee who broke into city hall and stole documents from his personnel file was subject to pension forfeiture). Contrast Garney, 469 Mass. at 385-386, 389-391 (no forfeiture where teacher purchased and stored child pornography on home computer because no connection to either his students or school property); Retirement Bd. of Maynard v. Tyler, 83 Mass. App. Ct. 109, 109, 112-113 (2013) (no forfeiture where fire fighter sexually abused children because acts occurred off duty

outside of fire house and fire fighter did not use "his position, uniform, or equipment for the purposes of his indecent acts"); Herrick v. Essex Regional Retirement Bd., 77 Mass. App. Ct. 645, 646-647, 654-655 (2010) (no forfeiture where housing authority custodian committed indecent assault and battery on daughter because offense not committed on housing authority property nor against any residents there, and did not bear other connection to custodian's position).

ii.  Legal links.  The other line of cases, involving direct legal links, mandates forfeiture under § 15 (4) when a public employee commits a crime directly implicating a statute that is specifically applicable to the employee's position. See Buonomo, 467 Mass. at 664-666, 670-671 (pension forfeiture where register of probate embezzled funds in violation of Code of Professional Responsibility for Clerks of Courts); Bulger, 446 Mass. at 177-180 (same with respect to clerk-magistrate who committed perjury and obstruction of justice).  Contrast Garney, 469 Mass. at 393 ("Criminal conduct that is merely inconsistent with a concept of special public trust placed in the position or defiant of a general professional norm applicable to the position, but not violative of a fundamental precept of the position embodied in a law applicable to it . . . is insufficient to justify forfeiture under G. L. c. 32, § 15 [4]").  The requisite direct legal link is shown where the

crime committed is "contrary to a central function of the position as articulated in applicable laws."  Id. at 391.

iii.  Analysis.  Finneran's conduct falls squarely within the first category, requiring forfeiture where there is a direct factual link between the public employee's position and the offense.[10]  Finneran's false testimony concerning his knowledge of and participation in the redistricting planning process is in at least two respects directly linked as a factual matter to his position as Speaker of the House.

First and foremost, Finneran's false testimony directly concerns and relates to his work on the redistricting plan as Speaker of the House.  Unlike those cited cases where a public employee's crime bore no relationship to his office or position, see, e.g., Garney, 469 Mass. at 389, Finneran's crime directly concerns actions that he had carried out when he served as Speaker, in his role as Speaker.  He worked on the redistricting plan in his capacity as Speaker and later testified falsely about it.  On its face, this connection is enough to create a

---

[10] Because we conclude that Finneran's conviction bears a direct factual link to his position as Speaker of the House, we do not address the question whether there is a direct legal link between the offense and his position.

"direct link between the criminal offense and [Finneran's] . . . position."[11]  See Gaffney, 423 Mass. at 5.

Another factual link between Finneran's crime and his position as Speaker of the House is his admitted motivation for its commission.  It had been alleged that the plan was adopted in order to dilute minority representation in a number of House districts, including Finneran's own district.[12]  By his own account, Finneran provided his false testimony to vindicate his conduct as Speaker of the House regarding the redistricting plan.  This further underscores the factual connection between Finneran's false testimony and his work on the redistricting plan as Speaker of the House.

Finneran contends that forfeiture is inappropriate because his offense does not fall within the scope of his duties as

---

[11] It is irrelevant whether Finneran's work on the redistricting process was a necessary part of his duties as Speaker of the House.  That he in fact played an integral part in the redistricting process through his role as Speaker is what creates the direct link to his false testimony.

[12] During his plea colloquy, Finneran stated:

"The accusations contained in the civil suit, your Honor, I found very, very troubling.  For [twenty-six] years I had represented a district that was overwhelmingly African-American, and I took great pride in my service of this district.  The accusations spoke to -- the plaintiff's civil suit spoke and alleged a deliberate racial manipulation in order to depress or suppress legitimate efforts at minority representation.  I was offended by the accusation.  I was angered by it, and I think, quite frankly, your Honor, it has led to this entire series of events which brings us here today."

Speaker of the House.  This argument is unavailing.  While

Finneran's offense itself does not directly implicate his duties

as Speaker of the House,[13] it is nonetheless inextricably

intertwined with his position.  Simply put, it is only because

he had been Speaker of the House at the relevant time that he

was in a position to testify as to the genesis of the

redistricting plan and to do so falsely.  This connection is

enough to warrant forfeiture under § 15 (4).  See, e.g., Maher,

67 Mass. App. Ct. at 616-617 (forfeiture proper where public

employee broke into city hall and stole his personnel records).

Given this, Finneran's conviction of obstruction of justice is a

"violation of the laws applicable to his office or position,"

pursuant to § 15 (4), and accordingly requires the statutory

forfeiture of his pension.

    c.  Eighth Amendment claim.  Finneran also contends that

should we conclude, as we have, that his pension is forfeit

pursuant to § 15 (4), such a penalty would be an excessive fine

in violation of the Eighth Amendment.[14]  He relies in this regard

---

[13] Nothing in the record suggests that Finneran testified in his official capacity as Speaker of the House or that he was in any way obligated to testify pursuant to his duties as the Speaker of the House.

[14] The Eighth Amendment to the United States Constitution provides:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Amendment is applicable to the States through the due process clause of the Fourteenth Amendment to the United States

upon our recent decision in Public Employee Retirement Admin. Comm'n v. Bettencourt, 474 Mass. 60 (2016) (Bettencourt). There, we determined that the forfeiture of a police officer's pension, worth at least $659,000, which was due to an offense for which he was given a $10,500 fine, without probation or prison time, violated the Eighth Amendment. Id. at 71-75. Not having raised this argument below, Finneran is precluded from raising the issue on appeal. See Commonwealth v. Rivera, 429 Mass. 620, 623 (1999). Nonetheless, even if Finneran had preserved the issue, the result would be the same.

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." Bettencourt, 474 Mass. at 72, quoting United States v. Bajakajian, 524 U.S. 321, 334 (1998). In applying this standard, we first consider the amount of the forfeiture. Bettencourt, supra. We then "gauge the degree of [Finneran's] culpability and, in that regard, . . . [1] consider the nature and circumstances of his offenses, [2] whether they were related to any other illegal activities, [3] the aggregate

---

Constitution. See Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433-434 (2001).

maximum sentence that could have been imposed, and [4] the harm resulting from them."  Id., citing Bajakajian, supra at 337-339.

In considering the amount of the forfeiture, Finneran relies on the Public Employee Retirement Administration Commission's determination that the present value of his "future benefits as of his retirement date was approximately $433,400."[15] We apply to that figure the four-factor standard from Bajakajian for gauging proportionality under the Eighth Amendment.  As to the first and second factors, Finneran was convicted of a felony, viz., obstruction of justice, his crime consisting of false testimony as to his involvement in a redistricting process that was later found to be in violation of the Voting Rights Act.[16]  With regard to the third factor, the maximum penalty for Finneran's crime was "a period of imprisonment of ten years, a $250,000 fine, a period of three years of supervised release, a five year period of probation, and a $100 special assessment." Fourth, given that the plaintiffs prevailed in the judicial proceeding, little apparent harm flowed from Finneran's crime.

---

[15] The board disputes this amount and points out that Finneran's failure to raise this argument below means that the value of his pension has never been presented to a judicial fact finder.

[16] We note that the United States District Court panel held that the redistricting plan had a discriminatory impact on African-American voters, but did not conclude that the plan was enacted with discriminatory intent.  Black Political Task Force, 300 F. Supp. 2d at 315-316.

The gravity of Finneran's offense and the maximum potential penalty for it distinguish his crime from the circumstances of <u>Bettencourt</u>.  That case involved a forfeiture of at least $659,000 in pension benefits, plus health benefits, following a series of misdemeanor offenses,[17] which did not relate to any other illegality, and carried an aggregate maximum penalty of 630 days imprisonment and a fine of $21,000.  See <u>Bettencourt</u> 474 Mass. at 72-74.  In stark contrast, Finneran's offense is a felony connected to a redistricting plan which violated Federal law, carrying a maximum penalty that includes ten years' imprisonment and a $250,000 fine.  The forfeiture of $433,400 in pension payments pursuant to § 15 (4) therefore does not qualify as an excessive fine in violation of the Eighth Amendment.

3.  <u>Conclusion</u>.  The case is remanded to the county court where an order shall enter reversing the judgment of the Boston Municipal Court, affirming the decision of the board, and remanding to the Boston Municipal Court for further proceedings consistent with this opinion.

<u>So ordered</u>.

---

[17] The case involved a police officer who unlawfully accessed the civil service promotional examination scores of twenty-one of his fellow officers in violation of G. L. c. 266, § 120F.  See <u>Public Employee Retirement Admin. Comm'n</u> v. <u>Bettencourt</u>, 474 Mass. 60, 61-62 (2016).