NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12458
SJC-12511


ESSEX REGIONAL RETIREMENT BOARD  vs.  JOHN SWALLOW & others.[1]
STATE BOARD OF RETIREMENT  vs.  BRIAN O'HARE & others.[2]



Essex.  Suffolk.     October 1, 2018. - January 18, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, & Cypher, JJ.


Retirement.  Pension.  Public Employment, Retirement, Forfeiture
     of pension, Police.  Police, Retirement, Regulations.
     State Police.



     Civil action commenced in the Superior Court Department on
July 14, 2015.

     The case was heard by James F. Lang, J., on motions for
judgment on the pleadings.

     After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

     Civil action commenced in the Superior Court Department on
January 29, 2015.

     The case was heard by Peter M. Lauriat, J., on motions for
judgment on the pleadings.

     _____

     [1] Justices of the Salem Division of the District Court
Department of the Trial Court.

     [2] Justices of the Cambridge Division of the District Court
Department of the Trial Court.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

Thomas C. Fallon for John Swallow.
Eric B. Tennen for Brian O'Hare.
Michael Sacco for Essex Regional Retirement Board.
David R. Marks, Assistant Attorney General, for State Board of Retirement.

CYPHER, J. These two cases present closely related questions concerning the scope of G. L. c. 32, § 15 (4) (§ 15 [4]), which provides that no member of a public employee retirement system shall be entitled to a retirement allowance after conviction of a criminal offense involving a violation of the laws applicable to his or her office or position.[3]

John Swallow was a police sergeant for the town of Manchester-by-the-Sea on administrative leave when he was charged with several crimes related to the discharge of his personal firearm, charges to which he admitted to sufficient facts to convict. Brian O'Hare was a police sergeant for the State police when he was charged with the Federal crime of using the Internet to entice a person under eighteen years of age to engage in unlawful sexual activity, a charge to which he subsequently pleaded guilty.

_____

[3] These cases were paired for oral argument and combined for purposes of this opinion because they raise essentially identical questions of law. Our analysis and decision apply equally to both.

In these cases, there are neither factual connections between the criminal activity and the officers' respective positions nor apparent violations of any laws expressly applicable to their positions. Notwithstanding, the Essex Regional Retirement Board (Essex board) and the State Board of Retirement (State board) each concluded that the officers' respective convictions violated the fundamental tenets of their positions as trusted law enforcement officials and denied the officers a retirement allowance under § 15 (4) as a result.

We conclude that, while the officers' conduct was entirely reprehensible, in view of the narrow interpretation that we have given to § 15 (4), requiring the forfeiture of their pension allowances was in error. Consequently, we affirm the decisions of the Superior Court judges allowing the officers' respective motions for judgment on the pleadings and vacating the boards' decisions otherwise.

Background. The facts are undisputed in both cases.

1. Swallow. Swallow was a police sergeant for the town of Manchester-by-the-Sea from March 1, 1989, until his termination on January 4, 2013. Following a string of personal tragedies in 2011 and 2012, Swallow began drinking heavily and struggled with significant depression. In June 2012, Swallow was placed on administrative leave pending investigation of an abuse allegation unrelated to this matter. He was required to return

his badge and service weapon at that time but retained his license to carry a firearm.

The incident that gave rise to Swallow's convictions took place in October 2012.  Swallow and his wife, Lauren Noonan, were at their home; Swallow was drinking heavily and acting erratically.  The couple argued, initially because Noonan was concerned that Swallow might drive his car while under the influence of alcohol, and the argument escalated.  At one point, Noonan stated that she wanted Swallow to leave the home.  Swallow refused, and Noonan indicated that if he did not leave she would testify against him regarding the abuse allegation.  Swallow grabbed Noonan by the shirt, yelled at her, and waved a handgun in her face.  Noonan left the home and began to walk to a neighbor's home.  While in the neighbor's driveway, she heard a single gunshot.

Swallow, apparently contemplating suicide, had fired what he called a "brave shot," i.e., a shot meant to determine whether he had the courage to commit suicide.  The bullet grazed his hand.  Swallow was arrested by the Beverly police that evening and ultimately pleaded guilty to (1) assault and battery, (2) discharge of a firearm within 500 feet of a building, (3) assault by means of a dangerous weapon, (4)

multiple counts of improper storage of a firearm,[4] and (5) intimidation of a witness.

Swallow committed his crimes while on administrative leave and with a personal firearm. He did not use his position as an officer or police resources to facilitate his crime. Nonetheless, the Essex board determined that Swallow's convictions required forfeiture of his pension under § 15 (4) because his offenses "strike at the heart of the duties of a police officer and simply cannot be separated from his position as a law enforcement officer," and his actions "were a violation of the public's trust as well as a repudiation of his official duties."

Swallow sought review in the District Court, arguing that forfeiture was unjustified where there was no reference to public employment in the criminal statute under which he was convicted, no direct factual link between his conduct and his position as a police officer, and no violation of any identifiable law applicable to that position. Swallow also argued that forfeiture violated the excessive fines clause of the Eighth Amendment to the United States Constitution. On

---

[4] A search of the house revealed a considerable collection of firearms and ammunition in the home, including hundreds of weapons that Swallow was storing for a friend who was on a military deployment. The police determined that three of the firearms observed in the house were not properly secured.

cross motions for judgment on the pleadings, a judge in the District Court vacated the Essex board's decision, concluding that Swallow's conduct and subsequent convictions were not connected sufficiently to his position to warrant forfeiture. That decision was subsequently affirmed by a judge of the Superior Court. Thereafter, the Appeals Court concluded that Swallow's use of a gun to threaten another's life violated the public's trust and was a repudiation of his official duties. Essex Regional Retirement Bd. v. Justices of the Salem Div. of the Dist. Court Dep't of the Trial Court, 91 Mass. App. Ct. 755, 760 (2017). Accordingly, the court reversed and remanded the matter to the District Court for consideration of the Eighth Amendment issue. Id. at 761.

2. O'Hare. O'Hare served as a trooper for the State police from 1986 until his resignation in October 2006. For several months in 2005 and 2006, O'Hare communicated online with, and eventually arranged to meet with, an individual whom he believed to be a fourteen year old boy but was actually an undercover agent with the Federal Bureau of Investigation (FBI). The FBI arrested O'Hare in February 2006. O'Hare subsequently resigned from his position and pleaded guilty to a charge of using the Internet to attempt to coerce and entice a child under the age of eighteen years to engage in unlawful sexual activity.

O'Hare did not use his position or State police resources to facilitate his crime; he used his personal computer and did not communicate with the undercover agent while on duty. The foregoing notwithstanding, the State board determined that Swallow's conviction required forfeiture of his pension under § 15 (4) because it constituted a violation of the core tenets of his position and went "directly to the heart" of his responsibilities and obligations as a State police trooper.

O'Hare sought review in the District Court, arguing that forfeiture was not warranted where his conviction was not related to his position as a State police trooper. The State board argued that his misconduct, although private, went to the heart of his obligation to enforce the criminal laws and, as a result, forfeiture was required. On cross motions for judgment on the pleadings, a judge in the District Court vacated the State board's decision, concluding that O'Hare's criminal conduct did not warrant forfeiture because it was wholly independent of his job as a State police trooper. That decision was subsequently affirmed by a judge in the Superior Court. Thereafter, the Appeals Court reversed, concluding that forfeiture was required because O'Hare's conduct violated the fundamental tenets of his role as a State police trooper, where the protection of the vulnerable, including children, is at the heart of a police officer's role, and this repudiation of his

official duties violated the public's trust and the integrity of the State police.  State Bd. of Retirement v. O'Hare, 92 Mass. App. Ct. 555, 559 (2017).

Discussion.  1.  Standard of review.  General Laws c. 249, § 4, "provides for limited judicial review in the nature of certiorari to correct errors of law in administrative proceedings where judicial review is otherwise unavailable." State Bd. of Retirement v. Bulger, 446 Mass. 169, 173 (2006). We may correct "only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff" and "rectify only those errors of law which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public" (citation omitted).  Garney v. Massachusetts Teachers' Retirement Sys., 469 Mass. 384, 388 (2014).

2.  Pension forfeiture pursuant to G. L. c. 32, § 15.  a. Origins of § 15 (4).  General Laws c. 32, § 15, contains four subsections that generally govern the consequences that result from the commission of certain criminal offenses to retirement rights of public employees.  Subsection (1) applies to those situations in which a member of the retirement system "has been charged with the misappropriation of funds or property of any governmental unit" in which he or she was employed.  Three other

subsections establish the consequences of convictions of certain criminal offenses.

Subsections (3) and (3A) are both entitled "Forfeiture of rights upon conviction."  Subsection (3) denies a retirement allowance after final conviction of such member "of an offense involving the funds or property of a governmental unit or system referred to in subdivision (1) of this section," and does not permit the return of retirement contributions "unless and until full restitution for any such misappropriation has been made." Subsection (3A) applies only in circumstances where a member has been convicted of certain specified offenses, i.e., those set forth in either G. L. c. 268A, § 2 ("Corrupt gifts, offers or promises to influence official acts; corruption of witnesses"), or G. L. c. 265, § 25 ("Attempted extortion; punishment").

Subsection (4), inserted by St. 1987, c. 697, § 47, and entitled "Forfeiture of pension upon misconduct," provides that "in no event" shall any member of the State retirement system be entitled to a retirement allowance "after final conviction of a criminal offense involving violation of the laws applicable to his office or position."[5]  This subsection was enacted in reaction to this court's decision in Collatos v. Boston Retirement Bd., 396 Mass. 684 (1986).  See Gaffney v.

---

[5] Retirement contributions are returned to the member. G. L. c. 32, § 15 (4) (§ 15 [4]).

Contributory Retirement Appeal Bd., 423 Mass. 1, 3 (1996). In Collatos, we determined that the Legislature intended subsection (3A) to result in forfeiture only if the employee was convicted of two specific State crimes. Collatos, supra at 687. As a result, a Federal conviction under the Hobbs Act, although arguably equivalent to a State offense enumerated in the statute, did not compel forfeiture. Id. at 687-688. Shortly after that decision, the Legislature inserted § 15 (4) "providing for an intermediate level of pension forfeiture in a broader array of circumstances." Gaffney, supra.

b. Application of § 15 (4). Our first substantive decision considering the applicability of § 15 (4) was Gaffney, 423 Mass. 1. In that case, the superintendent of the Shrewsbury water and sewer department pleaded guilty to stealing money and property from the town over the course of several years. Id. at 2. We reiterated our position in Collatos that pension forfeiture provisions are penal in character and must be construed narrowly. Gaffney, supra at 3. We considered this in tandem with the Legislature's apparent intention to expand the circumstances leading to pension forfeiture. Id. at 3-4 ("In using a broad phrase to describe the condition precedent to forfeiture, the intent clearly is to avoid having the precise form of the criminal enforcement action make a difference with respect to the pension forfeiture issue. Further evidence of

this stems from the title of § 15 [4] -- 'Forfeiture of pension upon misconduct'").  In that case we rejected an approach that would have § 15 (4) operate "only in cases of violations of highly specialized crimes addressing official actions, while not providing the same when officials engage in criminal activities in the course of their duties."  Id. at 4.  We reasoned that the Legislature did not intend for forfeiture to necessarily follow "any and all criminal convictions" and that the "substantive touchstone" is "criminal activity connected with the office or position" (emphasis added).  Id. at 4-5 (emphasizing that § 15 [4] targets "[o]nly those violations related to the member's official capacity").  In sum, we concluded that "[l]ooking to the facts of each case for a direct link between the criminal offense and the member's office or position best effectuates the legislative intent of § 15 (4)."  Id. at 5.

Massachusetts appellate decisions over the next decade reflect consistent application of § 15 (4) where members had engaged in criminal activities in the course of their duties, often resulting in at least one violation of a statute expressly applicable to public employees or officials.  See, e.g., MacLean v. State Bd. of Retirement, 432 Mass. 339, 340 (2000) (member of Legislature convicted of violating State conflict of interest law); Robinson v. Contributory Retirement Appeal Bd., 62 Mass. App. Ct. 935, 936 (2005) (police officer convicted of, inter

alia, conspiring with his partner to embezzle, steal, or obtain by fraud or otherwise significant sums of money that were under care and custody of their department); Fidelity & Deposit Co. of Md. v. Sproules, 60 Mass. App. Ct. 93, 94 (2003) (police chief convicted of larceny of controlled substance; attempting to procure perjury; intimidation of witness; and fraud or embezzlement by city, town, or county officer).

The opinion of Bulger, 446 Mass. at 179, which appears to rest on a broader interpretation of the statute, presented a novel set of facts. In that case, a clerk-magistrate was convicted of perjury and obstruction of justice in the context of an arguably personal matter. The convictions were unconnected factually to his position, and neither conviction expressly applied to public officials or employees. However, this court reasoned that "laws" applicable to clerk-magistrates included the Code of Professional Responsibility for Clerks of the Courts (code), S.J.C. Rule 3:12, as amended, 427 Mass. 1322 (1998). Bulger, supra at 177-178. Because the clerk-magistrate's perjury and obstruction of justice convictions clearly violated the code, a law applicable to his position, they resulted in forfeiture of his pension. Id. at 179.

Notably, we recognized that not every code violation would compel forfeiture: "the language of the code enunciating the high standards to which clerks are held is broad, whereas the

language of . . . § 15 (4) . . . is narrower, no doubt due to the severity of pension forfeiture as a sanction for dereliction of duty by a member."[6]  Id. at 178.  "Depending on the misconduct at issue, there may be instances when removal of a clerk-magistrate from office is mandated by G. L. c. 211, § 4, because it serves the public good, but pension benefits are not concomitantly terminated because the misconduct at issue does not fall within the purview of G. L. c. 32, § 15.  For example, a member may be convicted of a criminal offense that does not involve any violation of the laws applicable to his office or position."  Id. at 179.  We emphasized that in that case the clerk-magistrate's commission of perjury and obstruction of justice "violated the fundamental tenets of the code."  Id. Therefore, forfeiture was required.  See Retirement Bd. of Somerville v. Buonomo, 467 Mass. 662, 671 (2014) (forfeiture required where register of probate's convictions violated code

---

[6] We also rejected the argument that we should consider whether the clerk-magistrate's convictions, had they occurred while he was still employed as a clerk-magistrate, would have resulted in removal:  "such an analysis is too broad, and it fails to recognize that the standards for a member's removal from office and for a member's forfeiture of a retirement allowance are different."  State Bd. of Retirement v. Bulger, 446 Mass. 169, 178 (2006).  "[The] parameters for entering or remaining in the profession are not the same as the standard for forfeiting a pension to which an employee has contributed and that he or she earned over the course of many years of public service."  Garney v. Massachusetts Teachers' Retirement Sys., 469 Mass. 384, 391 (2014).

as well as at least one law plainly applicable to public officers).

After Bulger, Massachusetts appellate courts continued to uphold pension forfeitures in a narrow set of circumstances: those where a member had either (1) engaged in criminal activity factually connected to his or her position or (2) violated a law expressly applicable to public employees or officials. See State Bd. of Retirement v. Finneran, 476 Mass. 714, 722-723 (2017) (forfeiture required where Speaker of House's conviction of felony obstruction of justice resulted from false testimony he provided concerning his participation as Speaker in redistricting planning process); Buonomo, 467 Mass. at 672 (forfeiture required where register of probate convicted on multiple counts of breaking into depository [workplace cash vending machine]; larceny; and embezzlement by public officer); Dell'Isola v. State Bd. of Retirement, 92 Mass. App. Ct. 547, 553-554 (2017) (forfeiture required where correction officer's conviction of possession of cocaine resulted from officer's on-duty communications with inmate in custody); Durkin v. Boston Retirement Bd., 83 Mass. App. Ct. 116, 119 (2013) (forfeiture required where police officer used department-issued firearm to shoot fellow officer while intoxicated and off duty); Maher v. Justices of the Quincy Div. of the Dist. Court Dep't, 67 Mass. App. Ct. 612, 616-617, 621 (2006) (forfeiture required where

chief plumbing and gas inspector broke into city's personnel office, destroyed city property, and stole documents from his own personnel file with aim of removing documents criticizing his performance as chief inspector to improve his chances of reappointment).

By contrast, our appellate courts declined to uphold forfeitures where there were neither factual connections nor violations of laws expressly applicable to public employees or officials.[7]  See Garney, 469 Mass. at 387 n.7, 394-395 (forfeiture not required as result of teacher's convictions of purchase and possession of child pornography where teacher committed his crimes outside of school, without using school resources or otherwise using his position to facilitate his crimes, and without involving students in his illicit activities); Retirement Bd. of Maynard v. Tyler, 83 Mass. App. Ct. 109, 109, 112-113 (2013) (firefighter's sexual abuse convictions did not support forfeiture where acts occurred off

---

[7] We also have declined to require forfeiture pursuant to § 15 (4) where total forfeiture would violate the excessive fines clause of the Eighth Amendment.  See Public Employee Retirement Admin. Comm'n v. Bettencourt, 474 Mass. 60, 78-79 (2016) (§ 15 [4] could not be enforced against police officer who violated laws applicable to his position by illegally accessing personnel files of fellow officers while on duty in his official capacity as watch commander, on department premises, and while using department computer, because complete forfeiture of retirement benefits was not proportional to gravity of underlying offenses of which he was convicted).

duty outside fire house and firefighter did not use "his position, uniform, or equipment for the purposes of his indecent acts"); Scully v. Retirement Bd. of Beverly, 80 Mass. App. Ct. 538, 543 (2011) (forfeiture not required as consequence of library employee's convictions of possession of child pornography where there was no evidence that employee used his position or library resources to facilitate crime); Herrick v. Essex Regional Retirement Bd., 77 Mass. App. Ct. 645, 653-655 (2010) (forfeiture not required where housing authority custodian committed indecent assault and battery on daughter because offense was not committed on housing authority property or against any residents there, and offense did not bear other connection to custodian's position).

In short, our precedent requires a "direct link" between the criminal offense and the member's office or position, either "factual" or "legal." Finneran, 476 Mass. at 720. In cases involving factual links, a public employee's pension is subject to forfeiture only "where there is a direct factual connection between the public employee's crime and position." Id. at 720-721, and cases cited. In cases involving legal links, a public employee's pension is subject to forfeiture only "when a public employee commits a crime directly implicating a statute that is specifically applicable to the employee's position." Id. at 721, citing Buonomo, 467 Mass. at 664-666, and Bulger, 446 Mass.

at 177-180.  The requisite legal link is shown "where the crime committed is 'contrary to a central function of the position as articulated in applicable laws.'"  Finneran, supra, quoting Garney, 469 Mass. at 391.

3.  Analysis.  Neither Swallow's nor O'Hare's conduct was factually connected to his position as a police officer.  In addition, none of their convictions expressly applied to public officials or employees.  The question then is whether the convictions nevertheless constituted violations of "the laws applicable" to their positions.  G. L. c. 32, § 15 (4).

The boards argue that the officers' convictions violated the fundamental tenets of their positions such that there are sufficient legal links to merit forfeiture.  In reaching this conclusion, they emphasize that police officers voluntarily undertake to adhere to a higher standard of conduct than do ordinary citizens, that as law enforcement officials they hold a position of special public trust, and that each officer's conduct blatantly violated that trust.  Specifically, the Essex board argues that this case is analogous to Durkin in that Swallow's convictions are inconsistent with his position's obligations and the requirement that he "behave in a manner that brings honor and respect for rather than public distrust of law enforcement."  In a similar vein, the State board argues that O'Hare's convictions undermined the central role of a State

police trooper as articulated in the rules and regulations of the State police and undercut public confidence in the integrity of the State police.

  a.  Violation of special public trust.  The Essex board argues that under Durkin forfeiture is required where a police officer's violation of the law demonstrates a "violation of the public's trust" and a "repudiation of his official duties." Durkin, 83 Mass. App. Ct. at 119.  Indeed, both boards posit that the special position of trust police officers occupy in our society must factor into the determination whether an officer has violated a law applicable to his or her position.  The State board goes so far as to suggest that the commission of any crime is contrary to the central functions of a law enforcement official's position as a result of their "special position" in our society and thus might result in forfeiture.  We disagree.

  First, the Essex board's reliance on Durkin for the proposition that where a police officer violates the public trust and shirks his or her official duties forfeiture is mandatory is misplaced.  In that case, forfeiture was required where a police officer was convicted of assault and battery by means of a dangerous weapon for shooting another officer with his department-issued firearm.  Id. at 117.  Although the court discussed the fundamental nature of the police officer's position and noted that the officer had violated the public

trust by "engag[ing] in the very type of criminal behavior he was required by law to prevent," forfeiture was ultimately grounded on the factual connections between the officer's position and the criminal activity. Id. at 118-119. Cf. Tyler, 83 Mass. App. Ct. at 112-113 (forfeiture not required where firefighter's offenses lacked any factual connection to his position). In short, Durkin is not a "legal link" case. Accord Finneran, 476 Mass. at 720.

Second, we are not persuaded by the State board's argument that law enforcement officials are an exception to the proposition that pension forfeiture should not follow "as a consequence of any and all criminal convictions" because of their "special position" in our society. See Gaffney, 423 Mass. at 5. Indeed, the State board posits that "given the nature of the positions that troopers hold, the commission of any crime is contrary to the central functions of their positions to enforce the law and protect the public." This is precisely the kind of unfettered breadth that we have consistently avoided. See id. ("Yet it is also apparent that the General Court did not intend pension forfeiture to follow as a sequelae of any and all criminal convictions"); Durkin, 83 Mass. App. Ct. at 119 n.5 ("Notwithstanding the high standards placed on firefighters and police officers, not every off-duty illegal act qualifies as a violation of the laws applicable to his office or position"

[quotation and citation omitted]); Tyler, 83 Mass. App. Ct. at 112 (§ 15 [4] as currently written is "not so broad" as to "engulf nearly every public official, especially police officers and firefighters, convicted of any crime"). Regardless of the high standards placed on police officers, "not every off-duty illegal act qualifies as a violation of the laws applicable to his office or position" (quotation and citation omitted). Durkin, supra. Accord Tyler, supra. Indeed, § 15 (4) "requires something more specific than a violation of a special public trust in the particular public position." Garney, 469 Mass. at 393 (criminal conduct insufficient to justify forfeiture where it is "merely inconsistent with a concept of special public trust placed in the position or defiant of a general professional norm applicable to the position, but not violative of a fundamental precept of the position embodied in a law applicable to it"). Were we to adopt the State board's position, we would "expand the parameters" of § 15 (4) "well beyond what the Legislature intended for it to encompass." Id. Every legal link must be "embodied in a law." Finneran, 476 Mass. at 721, quoting Garney, supra.

b. Applicable "laws" under § 15 (4). Section 15 (4) is clear and unambiguous: the Legislature intended that pension forfeiture result only where criminal conduct underlying a particular conviction involved a violation of the "laws"

applicable to the member's office or position.  In determining what this limitation means, we must give the language effect consistent with its plain meaning and refrain from reading into the statute "a provision which the Legislature did not see fit to put there" or "words that the Legislature had an option to, but chose not to include" (citation omitted).  Canton v. Commissioner of the Mass. Highway Dep't, 455 Mass. 783, 789, 794 (2010) (statutory language should not be "enlarged or limited by construction unless its object and plain meaning require it" [citation omitted]).  Moreover, because § 15 (4) is penal in nature, its language must be construed narrowly, "not stretched to accomplish an unexpressed result."  Finneran, 476 Mass. at 719-720, quoting Bulger, 446 Mass. at 174-175.

The State board urges us to conclude that the "laws" applicable to the office or position of State police trooper include the State police rules and regulations, issued by the colonel of the State police pursuant to G. L. c. 22C, §§ 3 and 10, which function as a code of conduct.  These regulations require, among other things, that troopers avoid conduct that brings the State police into disrepute and obey all of the laws of the United States and of the local jurisdiction in which the trooper is present.  We decline to do so.

First, there is no indication that the Legislature intended § 15 (4) to be triggered by a violation of a rule, regulation,

professional oath, code of conduct, or other internal practice or policy that does not have the force of law. Had the Legislature so intended, it certainly could have included language to that effect, as it did in a preceding section. See G. L. c. 32, § 10 (2) (c) ("Any member who is removed or discharged for violation of the laws, rules and regulations applicable to his office or position . . . shall not be entitled to the termination retirement allowance provided for in this subdivision"). We will not conclude that such language is implied where the Legislature has excluded it. See Canton, 455 Mass. at 789 ("where the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded" [citation omitted]); State Bd. of Retirement v. Woodward, 446 Mass. 698, 706 (2006) (language appearing in one section of statute should not be read into another section where it does not appear).

Second, the State board's reliance on Bulger and Buonomo for the proposition that codes of conduct might serve as the applicable "law" because they establish the standards governing the norms of conduct and practice is misplaced. In Bulger, we concluded that the "laws" applicable to the office or position of clerk-magistrate include the code because "it establishes the very standards governing the norms of conduct and practice associated with such office," and the code has "the force of

law," i.e., it is just as binding on the court and the parties as would be a statute. See Bulger, 446 Mass. at 177-178; Buonomo, 467 Mass. at 671. See also Opinion of the Justices, 375 Mass. 795, 813 (1978) (Supreme Judicial Court has "the authority by rule to establish standards of conduct for judicial employees and officials"); Empire Apartments, Inc. v. Gray, 353 Mass. 333, 337 (1967) ("Rules of court have the force of law . . ."); Berkwitz, petitioner, 323 Mass. 41, 47 (1948) (rules of court "have the force of law and are just as binding on the court and the parties as would be a statute"). The code of conduct relied on by the State board is neither a court rule nor a statute. Cf. G. L. c. 22C (applicable to State police). In short, it is not a "law" for purposes of § 15 (4).

While the officers' actions were clear and serious violations of the law, it does not automatically follow that they are subject to loss of their retirement allowance by virtue of either their heightened obligation to uphold the law or their special position of trust in our society. Our case law is consistent on this point -- a legal link requires in the first instance a violation of an expressly applicable "law." See Finneran, 476 Mass. at 721 (criminal conduct must directly implicate statute that is specifically applicable to employee's position); Garney, 469 Mass. at 391 (criminal conduct must be contrary to central function of position as articulated in

applicable laws).  See also <u>Buonomo</u>, 467 Mass. at 670-671 (sufficient legal link between convictions and office where public official's criminal conduct violated fundamental tenets of code); <u>Bulger</u>, 446 Mass. at 179 (same).  In this case, neither board has identified a law expressly applicable to police officers that either Swallow or O'Hare can be said to have violated.  Thus, "[t]he critical alignment of crime and office through an applicable law, as required by this narrow statute, is simply not present."  <u>Garney</u>, <u>supra</u> at 395.  We conclude that in these cases, where there are neither factual links nor legal links between the officers' positions and their convictions, forfeiture of their pension allowances is not legally tenable.

<u>Conclusion</u>.  We affirm the decisions of the Superior Court judges affirming the District Court judges' decisions and vacating the boards' decisions.

<u>So ordered</u>.